# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JASON COTTERILL,

    Plaintiff,

v.                                                   Case No. 8:07-cv-262-T-30TBM

O. F. MOSSBERG & SONS, INC. and
WAL-MART STORES EAST, LP,

    Defendants.
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant O.F. Mossberg & Son's, Inc.'s ("Mossberg") and Wal-Mart Stores East, L.P.'s ("Wal-Mart," together with Mossberg, "Defendants") Motion for Summary Judgment (Dkt. 166), Plaintiff's Opposition to the same (Dkt. 172), Defendant Mossberg's Motion to Preclude Testimony and Opinions of Plaintiff's Designated Expert Tommy Burttschell (Dkt. 167), Plaintiff's Opposition to the same (Dkt. 174), Defendant Mossberg's Motion to Preclude Testimony and Opinions of Plaintiff's Designated Expert John Butters (Dkt. 168), and Plaintiff's Opposition to the same (Dkt. 173). The Court, having considered the motions, response, and supporting memoranda, and being otherwise fully advised in the premises, determines the motion for summary judgment should be granted in part and denied in part and the motion to preclude expert testimony should be denied.

**Background**

Plaintiff's claims arise from the explosion of a Mossberg 100 ATR bolt action rifle manufactured by Mossberg. On or about July 3, 2006, Plaintiff's fiancée, Bonnie Erickson, purchased the subject rifle from Wal-Mart with money she allegedly received from Plaintiff as a gift.[1] On the day of the purchase, Plaintiff and Erickson both fired the rifle. Neither Plaintiff nor Erickson experienced any problems operating the rifle at that time.[2] The rifle was also fired by Plaintiff's son and Erickson's son, neither of whom experienced any problems firing the rifle.

## I. The Incident

Around noon on July 12, 2006, the rifle exploded when Plaintiff attempted to fire it. Plaintiff was alone on his back porch at the time of the explosion. Erickson testified that she heard Plaintiff fire the gun twice, the second shot being the explosion. According to Erickson, the explosion shook their trailer. She went outside, where she observed Plaintiff sitting in a chair with a towel against his face. After observing his injuries, she yelled through the door for the kids to dial 911.

Corporal Eric Brown and Deputy Russell Hemmendinger, both with the Pasco County Sheriff's Office, responded to the scene. Corporal Brown secured the area and collected the evidence, including pieces of the rifle. Corporal Brown testified that Erickson told him the

---

[1] Plaintiff was legally prohibited from owning or possessing a firearm as a result of prior criminal offenses.

[2] Erickson later testified that she thought the gun felt "sticky." Plaintiff did not share this opinion and thought the gun felt fine.

gun had a bad bolt or firing pin that Plaintiff was aware of at the time of the accident, and that Plaintiff had been trying to fix it. Deputy Hemmendinger testified that upon arriving at the scene, he spoke with Plaintiff's neighbor, Charles Willey. Willey reported to Deputy Hemmendinger that the subject rifle had been broken for days.

Willey has offered additional testimony about the events leading up to the incident. According to Willey, Plaintiff and Erickson had thrown the rifle against a wall on several occasions prior to the incident. Willey testified that on the first occasion, the scope was severely damaged or broken. He claims to have taken the couple to Wal-Mart to replace the scope. According to Willey, a second incident involving the gun being thrown resulted in a long rod inside the bolt action, including springs and half-moon washers, falling out of the rifle. Willey further stated that "the whole thing, the whole magazine itself, fell out on the ground." (Willey Dep. at 26).

Willey claims Plaintiff showed him the broken rifle and asked him if he knew how to put it back together. Willey advised Plaintiff that he needed to replace the bolt action, which could be purchased at Wal-Mart. According to Willey, Plaintiff disregarded his advice and put the pieces back together himself. Willey later observed the bolt falling out of the rifle when Plaintiff pointed it at the ceiling. On the morning of the accident, Willey claims to have observed Plaintiff placing the bolt back in the receiver and tapping it with a hammer.

On the day of the accident, Willey came over to Plaintiff's home at around 10:00 a.m. to borrow Erickson's car. He claims to have observed Plaintiff drinking that morning, and further stated that Plaintiff and Erickson were "drunk before eight o'clock every morning,

most of the time." Id. at 40. Prior to taking the car, Willey told Plaintiff to wait until he returned so he could take him to Wal-Mart to purchase another bolt action.

The incident occurred while Willey was out. Willey claims Plaintiff ignored his advice because he was drunk. Willey also described Plaintiff as "accident-prone," and claims to have avoided Plaintiff and Erickson whenever they were shooting the rifle. Id. at 29-30. Following the accident, Willey testified that Plaintiff asked him not to tell anyone that the gun had been broken prior to the incident, and that in return Plaintiff would "hook [him] up as far as money-wise." Id. at 62.

Plaintiff denies Willey's allegations and claims the rifle was not altered in any way prior to the explosion. According to Plaintiff, the rifle was fired approximately 20-30 times during the nine days preceding the incident. Plaintiff claims that he and Erickson read the entire owner's manual that came with rifle, together with a booklet called "Firearms Safety Depends on You." During his deposition, Plaintiff testified that the gun was not broken prior to the incident. He claims he never went inside the bolt and was unaware of any parts within the bolt.

On the day of the incident, Plaintiff claims he cannot remember many of the events of the morning except for the explosion. During his deposition, he testified that he could not remember whether he had consumed any alcohol on the morning of the incident. He claimed he did not think he smoked marijuana or consumed any prescription drugs on the morning of the incident, but could not remember for sure. Plaintiff believes he fired two shots on the morning of the incident, and that he had no problem operating the rifle prior to the explosion.

## II. Mechanics of the Rifle Locking System

The Mossberg 100 ATR bolt action rifle incorporates a bolt locking system. Two locking lugs, located on the bolt head, are in a horizontal position when the bolt is moved forward and rearward within the receiver. In order move the locking lugs to a vertical locked position, a user must rotate the bolt handle through a 90 degree arc into a bolt handle clearance notch to a "down" position. A bolt head assembly pin ("assembly pin") ensures the locking of the locking lugs when the bolt handle is in a "down" position. Both Plaintiff's and Defendants' experts agree that the absence of the assembly pin would result in a failure of the locking lugs to lock. An attempt to fire the rifle under such circumstances would result in the explosion experienced by Plaintiff.

## III. Expert Opinions

Plaintiff seeks to have two experts present theories at trial regarding the cause of the rifle explosion. The first, Tommy Burttschell, identifies himself as a Master Gunsmith who has been educated in a clinical and classroom setting over the past fifty years. Mr. Burttschell claims he first worked as an apprentice to his father and grandfather, also gunsmiths. In 1963 he opened a gun repair shop, where he has worked ever since. Mr. Burttschell has received training at the Remington Arms Co., the Winchester Repeating Arms Co., and the Federal Bureau of Investigation Armorer and ballistics training school.

Mr. Burttschell first opined, based on testing, that the rifle was defective because it would fire even if the bolt handle was not in a fully locked down position. Brutschell

abandoned this theory at his deposition, opining instead that the explosion occurred as the result of a broken assembly pin. According to Mr. Burttschell,

> [f]rom 45 plus years of experience and looking at the design of this pin with the thinness of it on the sides of the hole where the firing pin goes through, that tends to make me come to the conclusion that it broke from the thinness of the metal on the sides.

(Brutschell Dep. at 99). Mr. Burttschell based this opinion on the assumption that Plaintiff did not break or disassemble the gun. In his opinion, assuming the gun was not disassembled and reassembled by Plaintiff, a broken pin was the only thing that could have caused the gun to explode. The pin from the subject rifle was never found.

Defendant's expert James Hutton, a mechanical engineer, agrees that the explosion was caused by a missing assembly pin. Following an examination of photographs of the rifle and a review of the relevant deposition testimony and discovery materials, Mr. Hutton concluded that there was no defect in the design of the rifle or the assembly pin. Rather, Mr. Hutton opined that the assembly pin was missing due to Plaintiff's reckless conduct in failing to properly reassemble the rifle after disassembling it.

Mr. Hutton argues, based on his testing of an exemplar rifle, that Plaintiff would have observed a number of warning signs prior to firing the rifle had the assembly pin been missing. First, the bolt head would not be secure and would fall off the bolt body if the rifle was raised. Second, he would have experienced great difficulty when attempting to insert the bolt into the receiver due to a lack of alignment between the receiver and the firing pin head. Third, he would have needed to exert approximately twenty pounds of pressure in

order to force the bolt handle into the "down" position. Such a degree of force is much more than is normally required when the assembly pin is in place. Finally, the bolt handle and tube would have come out of the rifle when Plaintiff retracted the bolt to load a round. The bolt head would have separated from the bolt tube, which would have remained inside the receiver.

Plaintiff also seeks to offer opinions from another expert witness, John Butters. Mr. Butters is an engineer who offers two alternative theories for how the explosion occurred. Mr. Butters admitted that he did not have sufficient data to conclude whether or not the assembly pin failed. Instead, he argues the rifle was defective due to a loose connection between the bolt handle casting and the bolt body. Mr. Butters also claims the rifle is defective because it fails to incorporate a firing pin stop system that prevents the protrusion of the firing pin from the bolt face unless the locking lugs are in a fully locked position.

Defendants seek to exclude the testimony of both of Plaintiff's experts and have thus moved for summary judgment on all of Plaintiff's claims. Because the Court determines Defendants' motion to exclude the testimony of Mr. Burttschell should be denied, it also determines Defendants' motion for summary judgment should be denied, at least in part.

On February 12, 2008, the Court heard oral argument regarding Defendants' motion to exclude the testimony of Mr. Butters. For the reasons stated in open court, Defendants' motion is granted to the extent it seeks to exclude testimony that the rifle defective due to a loose connection between the bolt handle casting and the bolt body. As discussed, the Court

will conduct a Daubert hearing regarding Mr. Butter's theory that the rifle was defective because it failed to incorporate a firing pin stop system.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Chelates, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49.

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

Plaintiff has alleged causes of action against Mossberg for strict liability (Count I), breach of warranty (Count II), negligence (Count III), intentional misrepresentation/failure to warn (Count IV), and negligent misrepresentation (Count V). Plaintiff has also alleged a cause of action against Wal-Mart for Strict Liability. The testimony of Plaintiff's experts is central to each of its claims. Accordingly, the Court will first address Defendants' motion to exclude the testimony of Mr. Burttschell.

Defendants first argue Mr. Burttschell's testimony should be excluded because Plaintiff's counsel failed to timely disclose his opinion. Defendants argue Mr. Burttschell's current theory of defect, that the assembly pin broke, was not raised until his deposition was taken and was not included in a proper expert report as required by Fed.R.Civ.P. 26. As a

result, Defendants argue they were unfairly prejudiced by this new opinion as they were unable to appropriately prepare for his deposition.

The Court rejects this argument. Mr. Burttschell's opinion regarding the cause of the explosion is consistent with that of Defendants' own expert. One opines that the assembly pin broke, the other that it was missing. Each opinion is based on an alternative version of the facts. Plaintiff may or may not have disassembled and reassembled the gun and lost the pin. The pin may or may not have broken prior to the gun firing. Either way, both experts opine that the explosion was caused as a result of the pin being missing or broken prior to the gun firing. Defendants had ample opportunity to question Mr. Burttschell at his deposition and are not prejudiced by the "change" in his opinion.

Defendants also argue that Mr. Burttschell's opinions are inherently unreliable, have not been tested, and lack any factual basis. Pursuant to Federal Rule of Evidence 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As directed by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589 (1993), a district court must perform a gatekeeping function concerning the admission of expert scientific or technical evidence. District courts must engage in a three part inquiry to determine whether "(1) the expert is qualified to testify competently regarding the matters

he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005).

In considering these factors, the Court determines Mr. Burttschell, as a Master Gunsmith with fifty years experience, is qualified to testify regarding the cause of the rifle's explosion. Defendant argues Mr. Burttschell did not employ acceptable scientific methodology to reach his opinion that the assembly pin broke because he did not examine the pin, determine how it broke, test the strength of the metal, or review any documents regarding the design, manufacture, and testing of the subject rifle. However, the Court determines such testing was not necessary.

Mr. Burttschell based his opinion, in part, on the thinness of the metal required to fit through the hole where the pin had been inserted. From his experience as a gunsmith, including observation of broken pins in other guns, Mr. Burttschell is of the opinion that the explosion was caused by a broken assembly pin. He agrees that removal of the pin by Plaintiff also would have resulted in the explosion. However, he appropriately acknowledges that whether the pin broke or was removed is not for him to decide. His testimony will help the jury determine a fact at issue (it offers an explanation for the explosion absent tampering). Accordingly, he should be permitted to testify at trial.

Plaintiff has raised a material issue of fact as to whether the assembly pin broke, thus causing the rifle to explode. Defendants have provided evidence, including the testimony of Charles Willey, that Plaintiff damaged, disassembled, and reassembled the rifle prior to it exploding. The assembly pin may have been lost as a result of this process. However, this factual determination, including consideration of Plaintiff's, Erickson's, and Willey's credibility, is better left to a jury. Taking the facts in the light most favorable to Plaintiff, the Court concludes Plaintiff has raised a material issue of fact that precludes entry of summary judgment.

This issue of fact is central to each of Plaintiff's causes of action. With respect to Plaintiff's strict liability claim, "a manufacturer is strictly liable in tort" under Florida law "when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." West v. Caterpillar Tractor Co., 336 So. 2d 80, 92 (Fla. 1976).[3] In order to hold a manufacturer liable on a theory of strict liability, "the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and the existence of a proximate causal connection between such condition and the user's injuries or damages." Id. at 87. Plaintiff has raised material issues of fact regarding whether the rifle

---

[3]This Court, sitting in diversity, is required to apply state substantive law to Plaintiff's claims. See Burke v. Smith, 252 F.3d 1260, 1265 (11th Cir. 2001).

had a defective pin, thus causing it to explode and injure Plaintiff. Accordingly, Defendants' motion for summary judgment should be denied as to Plaintiff's strict liability claims.[4]

According to the Florida Supreme Court, "[s]trict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence." Id. at 90. Accordingly, Defendants' motion for summary judgment should also be denied as to Plaintiff's negligence claim.

Mossberg argues it is entitled to summary judgment on Plaintiff's breach of warranty claim because there was no privity of contract between Plaintiff and Mossberg. In Kramer v. Piper Aircraft Corporation, 520 So. 2d 37, 39 (Fla. 1988), the Florida Supreme Court recognized that the common law implied warranty claim for personal injury no longer exists under Florida law because it was replaced by new action of strict liability in tort established in West. However, the Court recognized that "[t]he implied warranty cause of action remains unaltered where privity of contract exists and in those cases which fall within the scope of § 672.318, Fla. Stat." Id. at n4. Pursuant to Fla. Stat. § 672.318, "[a] seller's warranty whether express or implied extends to any natural person who is in the family or household of his or her buyer" or "who is a guest in his or her home." Plaintiff has provided testimony that he and Erickson shared the same home. Accordingly, the Court determines the statute

---

[4]Under Florida law, "a strict liability theory may apply to manufacturers, as well as to others in the distribution chain, including retailers, wholesalers, distributors, and most recently, commercial lessors." Williams v. National Freight, Inc., 455 F. Supp. 2d 1335, 1337 (M.D.Fla. 2006) (citing Samuel Friedland Family Enters v. Amoroso, 630 So. 2d 1067, 1068 (Fla. 1994). Accordingly, Defendants' motion for summary judgment is also denied with respect to Plaintiff's strict liability claim against Wal-Mart.

applies to the instant facts and Defendants' motion should be denied to the extent it seeks summary judgment on Plaintiff's breach of warranty claim.

Plaintiff has also alleged a cause of action for intentional misrepresentation/failure to warn. Under Florida law, unless a "danger is obvious or known, a manufacturer has a duty to warn where its product is inherently dangerous or has dangerous propensities." Scheman-Gonzalex v. Saber Manufacturing Co., 816 So. 2d 1133, 1139 (Fla. 4th DCA 2002). To warn adequately, "the product label must make apparent the potential harmful consequences. The warning should be of such intensity as to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." Id. (additional citation omitted).

Defendants argue Plaintiff has failed to provide evidence that its warnings were inadequate. Defendant points out that Plaintiff's experts were not critical of the warnings included in the owner's manual that was provided to Erickson when she purchased the rifle. Plaintiff argues Defendants failed to give a sufficient warning that if the bolt (or pin) fell out of the rifle or was damaged, the rifle would be in an unsafe condition. Under Plaintiff's version of the facts, the rifle simply exploded during normal use.

While the owner's manual contains a number of warnings regarding use of the subject rifle, including warnings against disassembly of the rifle by anyone but a certified gunsmith, there is no warning that the rifle could explode under normal use. According to Plaintiff, this is precisely what happened. Furthermore, Plaintiff has raised material facts regarding Mossberg's awareness of a problem with the bolt head or assembly pin. Accordingly, Defendants' motion should be denied with respect to Plaintiff's failure to warn claim.

Plaintiff has also alleged an independent cause of action for negligent misrepresentation. The Court first notes that the cause of action for "negligent misrepresentation" is essentially a claim for the tort of fraud. In order to recover damages on this claim (or a fraudulent misrepresentation claim), a plaintiff must prove the following elements: "(1) a false statement or omission of a material fact; (2) the representor's knowledge that the representation is false, lack of knowledge by the representor as to the truth or falsity of the representation, or that the representation was made under circumstances in which the representor ought to have known of its falsity, (3) the representor's intention that the representation induce another to act on it; and (4) injury to the Plaintiff as a consequence of justifiable reliance on the representation." Barrow v. Bristol-Myers Squibb, 1998 WL 812318, *42 (M.D.Fla. October 29, 1998) (citing Schubot v. McDonalds Corp., 757 F. Supp. 1352, 1355 (S.D.Fla. 1990), aff'd 963 F.2d 385 (11th Cir. 1992)) (additional citations omitted).

Plaintiff has failed to provide evidence of a false statement or material omission made by Defendants. Moreover, Plaintiff has failed to provide evidence of a false statement made to Plaintiff. Any argument that the owner's manual is false in that if fails to provide adequate warnings is duplicative of Plaintiff's failure to warn claim. Accordingly, the Court will grant summary judgment in favor of Defendant as to Count V of Plaintiff's Complaint.

It is therefore ORDERED AND ADJUDGED that:

1. Defendants' Motion for Summary Judgment (Dkt. 166) is **GRANTED in part and DENIED** in part as set forth herein. The Motion for Summary Judgment

is granted in favor of Defendants' as to Count V and denied as to Plaintiff's remaining claims.

2. Defendant Mossberg's Motion to Preclude Testimony and Opinions of Plaintiff's Designated Expert Tommy Burttschell (Dkt. 167) is **DENIED**.

3. Defendant Mossberg's Motion to Preclude Testimony and Opinions of Plaintiff's Designated Expert John Butters (Dkt. 168) is **GRANTED in part** as set forth herein. The Court will conduct a hearing at a later date to address the remaining issues raised in this motion.

**DONE** and **ORDERED** in Tampa, Florida on February 12, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-262.msj.frm